IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

| | |
|---|---|
| BRENTLEY FOSTER, JODY VAUGHAN, PHIL DUONG,<br><br>    Plaintiffs,<br><br>  vs.<br><br>PATRICK FLAHERTY, individually and in his personal capacity for actions he took under color of state law as Deschutes County District Attorney-Elect, COUNTY OF DESCHUTES, an Oregon municipal corporation, DESCHUTES COUNTY BOARD OF COMMISSIONERS ALAN UNGER, TAMMY BANEY and DENNIS LUKE, individually and in their personal capacities for actions they took under color of state law,<br><br>    Defendants. | Case No. 11-6115-HO<br><br>ORDER |

## ALLEGATIONS

Plaintiffs are former deputy district attorneys for Deschutes County, Oregon. The 2010 election for district attorney in Deschutes County involved bitter and intense campaigning. In an effort to unseat then current District Attorney Mike Dugan, eventual winner Patrick Flaherty, referenced allegations of creation of a hostile work environment by plaintiff Jody Vaughan in response to suggestions that Flaherty would cause turmoil in the office by firing current deputies if elected. Plaintiff Brentley Foster openly defended Vaughan. Other deputies defended Vaughan as well. Flaherty was elected Deschutes County District Attorney on May 18, 2010 and scheduled to take office in January of 2011.

After winning the election, Flaherty informed county officials that he had a list of attorneys he intended to fire. In response, a number of the deputy district attorneys considered forming a union in and did file a formal petition to form a union on July 16, 2010.

On August 17, 2010, Flaherty informed the chief deputy district attorney that he intended to fire him. Flaherty based his decision on the chief's failure to display sufficient loyalty to Flaherty as he had supported District Attorney Dugan's campaign for reelection.

On September 14, 2010, the deputy district attorneys voted 10 to 5 (with one ballot unreturned) in favor of unionization. When

asked about the union vote, Flaherty responded that an election often results in significant staff turnover and expressed the opinion that the deputies could not protect their jobs via collective bargaining.

The union was officially certified on September 27, 2010, and voted Vaughan as its president, Foster as its vice president, Mary Anderson as its treasurer, Kari Hathorn as its secretary, and Kandy Gies as its sergeant-at-arms.

On October 18, 2010, Flaherty wrote the Deschutes County Commissioners that he had determined that "[c]ertain Deputy District Attorneys who are currently employed by my predecessor will not be appointed at the commencement of my term as District Attorney." He also intended to take action that would moot the need for a collective bargaining agreement with a just cause provision by dismissing those attorneys who supported such a provision. Accordingly, Flaherty encouraged the county to withhold taking any action on any proposed collective bargaining agreement (CBA) until he takes office and appoints his deputies. However, the county provided the union with a contract proposal on October 22, 2010.

On October 23, 2010, Flaherty informed 15 of the 16 unionized

deputies,[1] that they need to send him a letter of interest and a resume if they wished to be considered for appointment as deputies in his office. Upon receipt, Flaherty would schedule interviews. Flaherty did not publicly solicit for these purportedly vacant positions.

On October 25, 2010, plaintiff Phil Duong met with Deschutes County human resources to inquire about the propriety of Flaherty's action and sought guidance on how to respond.

On October 26, 2010, Deschutes County legal counsel expressed concern that Flaherty may be targeting deputies for discharge in retaliation for exercising their rights to participate in union activities.

Plaintiffs submitted cover letters and resumes to Flaherty, along with 11 other deputies. The lone deputy not to submit a resume felt she was on the target list and chose not to deal with the stress and resigned. In addition, Vaughan withdrew from a rape case in which the defendant was represented by Flaherty's wife due to the conflict created by Vaughan seeking to retain employment with Flaherty.

District Attorney Dugan also determined that conflicts over his office prosecuting cases in which Flaherty's law firm represented some 25 to 30 defendants required his office to

---

[1] Deputy district attorney Wells Ashby was not included because he had been elected to serve as Circuit Court Judge.

ORDER - page 4

withdraw from prosecuting those cases due to the re-application process instituted by Flaherty.

On November 5, 2010, Vaughan expressed opinions, in a letter to County counsel, that County Commissioners may impose a just cause requirement for termination of deputies. After Flaherty received a copy of the letter, he scheduled an interview with Vaughan on November 8, 2010.

The County encouraged and paid the deputies to interview with Flaherty during regularly scheduled work hours. The interviews were conducted at Flaherty's law practice office. By November 17, 2010, Flaherty called 10 deputies to inform them they would continue their employment. Plaintiffs were not among those so informed.

On November 17, 2010, assistant county counsel provided the union with a proposed CBA which contained a broad just cause provision that provided cause for termination for a number of reasons, including willful disregard to the District Attorney's philosophies and objectives. The just cause provision would not apply to any deputy with less than one year experience.

Because secretary of the union Hathorn had less than a year of experience and feared reprisal, she resigned her position with the union on November 19, 2010. Several hours after her resignation, Flaherty informed Hathorn, that she would be retaining her position. Also on November 19, 2010, Flaherty informed plaintiff

ORDER - page 5

Duong that he would be retaining his position.

The County provided Flaherty with an opportunity to address the County Commissioners before a vote on the CBA which had been approved by the union on November 24, 2010. On November 29, 2010, Flaherty informed the County that he wanted it to send termination letters to the unionized deputies, but the county declined because District Attorney Dugan did not agree. The county delayed the vote on the CBA until Flaherty could address the commissioners.

On December 14, 2010, the county notified deputy district attorneys that 2011 bar dues would not be timely paid in December, but that the county would wait until January 5, 2011, as not everyone would necessarily be employed by the county.

At a December 15, 2011 commissioners meeting, Flaherty informed the commissioners that he intended to replace four deputies, including plaintiffs Vaughan and Foster, even if a CBA just cause provision was in place.[2] However, Flaherty also argued that legal liability would be lessened if the commissioners delayed a vote on the collective bargaining agreement. The commissioners decided to delay the vote until January 12, 2011.

Although plaintiff Duong had not been targeted for termination prior to the decision to delay the vote, defendants received notice from certain plaintiffs that they would be subject to gender

---

[2] Flaherty also met privately with the Commissioners to express his opinions about the contract.

discrimination claims. Duong was the only male deputy who voted in favor of union formation. Flaherty also believed that Duong's wife had been involved in organizing a campaign to recall Flaherty. On December 20, 2011, Flaherty sent letters to plaintiffs informing them that when he takes over as district attorney, on January 1, 2011,[3] he would not employ them and they should direct inquiries to the county personnel department.

On December 21, 2011, the Deschutes County personnel manager e-mailed the targeted deputies to refute Flaherty's December 20, 2011 notice stating that no formal action had been taken to terminate employment and they will remain on county payroll and should observe county policies regarding work schedules and reporting times. However, Flaherty sent a second notice on December 22, 2011, informing the targeted deputies that they must turn over government property and vacate their office by the close of business on December 30, 2011. Flaherty also directed the deputies to report to the county personnel services manager for an exit interview on January 3, 2011.

The targeted deputies contacted county counsel and requested certified copies of their personnel files. The county did not provide the files. However, on December 22, 2011, county human resources department contacted the deputies to inform them that Flaherty exceeded his authority and that they had not been formally

---

[3]Flaherty's term did not officially begin until January 3, 2011.

terminated. Nonetheless, on December 23, 2011, the county informed its health insurance provider to cease benefits for the targeted deputies as of January 31, 2011.

On December 29, 2011, the county directed the targeted deputies to report to the personnel office rather than the District Attorney's office on January 3, 2011. On January 3, 2011, the county formally considered the deputies terminated.

Based on Flaherty's actions, only four of the original deputies to vote in favor of unionizing remained and Flaherty then had five vacancies to fill. Flaherty filled one position on January 7, 2011, without posting for the position.[4] The remaining positions were filled with a former associate of Horton, a former Deschutes County deputy district attorney and two fresh law school graduates,.

On January 12, 2011, the commissioners again delayed the vote on the CBA as Flaherty started a decertification process. Flaherty directed Horton to distribute leaflets with an agreement to the deputies requesting support of the new District Attorney and a vote to decertify. No one signed the agreement. On January 19, 2011, the commissioners ratified the collective bargaining agreement.

Plaintiffs bring this action against Deschutes County District Attorney Flaherty; Deschutes County; and Deschutes County

---

[4]The position, filled by former Lane County District attorney, Pat Horton, was initially classified as a consultant while Horton renewed his license to practice. On March 7, 2011, Horton was officially approved as a deputy.

ORDER - page 8

Commissioners Alan Unger, Tammy Baney, and Dennis Luke. Plaintiffs allege claims for violation of free speech rights, wrongful discharge, breach of the covenant of good faith and fair dealing, sex discrimination, aiding and abetting sex discrimination, and intentional interference with economic relations. Deschutes County and its three Commissioners move to dismiss the claims against them.

## DISCUSSION

### A.  Free Speech Retaliation

Plaintiffs allege that the county and its commissioners aided in the retaliation by Flaherty for organizing a union and expressing their opinions about the campaign in violation of their free speech and associational rights. The county and the commissioners contend that plaintiffs are not employees of the county and that the county had no authority over the District Attorney's actions. In addition, the county and commissioners argue they have legislative immunity from section 1983 liability.

#### 1.  County As Employer

Plaintiffs offer alternate tests for determining employer status including a joint employer test. However, under Oregon law, the right to control is the decisive factor for determining employment.

For purposes of a 42 U.S.C. § 1983 claim, whether a person is an employee of a public body is a question of state law. See Collins v. City of Harker Heights, TX, 503 U.S. 115, 128 (1922) ("state law, rather than the Federal Constitution, generally governs the substance of the employment relationship."); Weiner v. San Diego County, 210 F.3d 1025, 1028 (9th Cir. 2000) (courts look to state law to determine whether an official acts for the state or the county). Whether an individual is an employee is a legal conclusion that depends upon a factual determination of the extent to which the purported employer has the right to control the performance of services by the individual. Schaff v. Ray's Land & Sea Food Co., Inc. 335 Or. 94, 103 (2002). Because Oregon's statutes define the right to control in this context, there can be no factual dispute as to who employed plaintiffs.

Under ORS 8.760:

> The county court or board of county commissioners may empower the district attorney to appoint one or more deputy district attorneys whose compensation shall be fixed by the county court or board of county commissioners and paid out of the county funds in the same manner as county officers are paid.

Under ORS 8.780:

> A district attorney shall appoint deputies. A deputy district attorney shall have the same qualifications as the district attorney, and subject to the direction of the district attorney, has the same functions as the district attorney.

As noted by former Magistrate Judge Cooney of this court,

> The right to control test is not based on the actual

ORDER - page 10

> exercise of control, but on the right to control the manner and means of accomplishing the result. Cantua [v. Creager, 169 Or.App. 81, 92 (2000)]. Four factors are relevant in determining whether a purported employer has the right to control an individual: 1) direct evidence of the right to control an individual; 2) the method of payment; 3) furnishing of equipment; and the right to discharge. Id. Between control and the payment of wages, control is the decisive factor for determining employment. Matter of Compensation of Hunter, 54 Or.App. 718, 722, 635 P.2d 1371 (1981).
>
> Under Oregon law, district attorneys are law officers of the state. Oregon Constitution Article VII § 17; State v. Clark, 291 Or. 231, 245, 630 P.2d 810, cert. denied, 454 U.S. 1084, 102 S.Ct. 640, 70 L.Ed.2d 619 (1981); State v. Coleman, 131 Or.App. 386, 390, 886 P.2d 28, review denied, 320 Or. 588, 890 P.2d 994 (1995). The state allocates money to pay or help pay the salaries of district attorneys and deputy district attorneys. See 2003 Oregon Laws Chapters 9 and 624. District attorneys are elected by the voters of each county, and, when a vacancy occurs, the governor appoints a person to fill the vacancy until the next election. ORS 8.610 and ORS 8.640. The county provides the district attorney and deputy district attorneys with office space, facilities, supplies, and assistance. ORS 8.850.
>
> The district attorney has the power to appoint deputy district attorneys. ORS 8.760 and ORS 8.780. Deputy district attorneys are "subject to the direction of the district attorney". ORS 8.780. Deputy district attorneys serve at the pleasure of the district attorney. 1984 WL 192152 (Or.A.G.).

Bishop v. Oregon, 2003 WL 24002421 at *5 (D.Or. Nov. 3, 2003).

Given the explicit definitions contained within Oregon law,[5] there can be no set of facts that would demonstrate that the district attorney, a state officer, did not have the right and

---

[5] It should also be noted that the Oregon Tort Claims Act includes deputy district attorneys in the definition of "state officer, employee or agent," but does not include non-attorney/law clerk employees of the district attorney's office who shall be considered employees of the county. ORS § 278.120

ORDER - page 11

power to control plaintiff's manner and means of work. Moreover, plaintiff's attempts to portray the county as a joint employer fails because the statutes expressly reserve control to the district attorney, and, as noted above, the right to control test is not based on the actual exercise of control, but on the power to control. Bishop 2003 WL 24002421 *5; Great American Ins. v. General Ins., 257 Or. 62, 66-67, (1970) (the test is based not on the actual exercise of control by the employer, but on the right to control).

Plaintiffs also point to elements of the CBA that purportedly give the power to control the terms and conditions of plaintiff's employment such as hiring procedures, and disciplinary and discharge rights. However, the complaint itself demonstrates that the CBA was not in place at the time of the complained actions. Morever, plaintiffs do not provide adequate support for the proposition that the county may usurp powers granted by state statute to the District Attorney.[6] The presence of a CBA with the county does not create employer status where the power to control is retained by state officers. See Matter of Compensation of Hunter, 54 Or.App. at 722, n. 2.

Plaintiffs also make much of the Oregon Supreme Court's notation that the policy of the state is to encourage county civil

---

[6]Plaintiffs itemize several other factual allegations in support of their joint employer theory. See Plaintiff's Memorandum (#20) at p. 15. However, much of it deals with pay and benefits or county reaction to employment decisions made by Flaherty rather than control over employment by the County. As noted above, control is the decisive factor over pay.

ORDER - page 12

service and collective bargaining agreements at the expense of the hire and fire authority granted by statute to elected officials. Graves v. Arnado, 307 Or. 358, 363 (1989). However, Graves involved interpretation of ORS § 204.601, which was circumscribed by ORS § 204.121 which explicitly provided that the subject statute did not supersede any provision of county civil service law. Indeed, Graves involved an elected official who was a county (sheriff), not state official, and that official's power to control employment, accordingly, was limited by collective bargaining agreements. Although the county did eventually enter into a CBA with district attorneys, there is no authority suggesting such agreement with the County actually limits the right to control employment expressly reserved by statute to the district attorney. Again, it is the right to, as opposed to actual exercise of, control that decides the employment status.

Although section 1983 liability does not always require the actor to be the employer, the allegations in this case depend on such a relationship to establish liability. The alleged harm resulted from plaintiff's dismissal, but the power to hire and fire is delegated by statute to the District Attorney. The county did not have the authority to limit the district attorney's power. Cf. Graves 307 Or. at 912-13 (county authorized to impose condition of just cause on Sheriff's statutory authority to appoint and/or terminate via ORS § 204.601). Indeed, the complaint alleges that Flaherty intended to terminate plaintiffs regardless of whether the

ORDER - page 13

county adopted the CBA. See E.g., Complaint (#1) at ¶ 129. Although the complaint also alleges that some commissioners felt that they could bind the district attorney, Oregon statutes do not provide such authority, instead vesting the hire and direction authority exclusively in the district attorney.[7]

Plaintiff's also assert their rights were violated in that they were required to interview with Flaherty prior to Flaherty's installment as District Attorney and that the county facilitated this violation. However, no economic harm is alleged to have resulted from the interviews themselves. To the extent the allegations could be read to establish non-economic harm, then District Attorney Dugan, who had authority to direct the plaintiffs, encouraged plaintiffs to comply with Flaherty's request. No reasonable set of facts could establish that failing to dock pay or require use of leave time resulted in the violation of plaintiff's constitutional rights. Moreover, the actor alleged to have committed the constitutional torts, Flaherty, is, at best, a policymaker for the state (as a state officer), not the county. In addition, the county is not in a position to ratify or reject the policy of a district attorney regarding the appointment of his deputies. Municipal liability cannot be attributed to the county for the actions of a non-County policymaker. Accordingly,

---

[7]At oral argument, plaintiffs suggested that ORS § 8.760 gives the county the power to eliminate all deputy district attorneys, but the ability to defund the positions is not equivalent to the power to control the performance of services by the individuals. Between control and the payment of wages, control is the decisive factor for determining employment.

ORDER - page 14

plaintiff's section 1983 claim against the county and county commissioners is dismissed.[8]

### B. Wrongful Discharge

Because the county was not plaintiffs' employer, this claim against the county must also be dismissed because the county did not discharge plaintiffs.

### C. Breach of the Duty of Good Faith and Fair Dealing

There was no contract between the County and union at the time of plaintiffs' terminations because the CBA had not been ratified. Plaintiffs argue the duty of good faith and fair dealing arose from a promise to hold a vote before the end of the year. Even if such a promise could serve as the premise for the breach of good faith and fair dealing claim, no set of facts could demonstrate harm from such breach as the state statutes confer the power to control employment on the District Attorney, not the county. As noted above, the complaint alleges Flaherty expressed his intention to terminate plaintiffs even if the CBA had been approved. Moreover, such a promise cannot bind the county because required negotiations

---

[8] The court also agrees that the commissioners are entitled to legislative immunity because the plaintiffs concede that the actual vote to ratify the CBA is a legislative act subject to immunity. The preliminary steps in legislative decision making and the decision itself are properly considered the formulation of policy. See Community House, Inc. v. City of Boise, Idaho, 623 F.3d 945, 962 (9th Cir. 2010) (it is not the within the province of the courts to second-guess the difficult policy decisions legislators must make and the ultimate decision is the culmination of repeated efforts to ensure that the issue is addressed)

ORDER - page 15

between a public entity and a union do not compel the public body to ratify the proposal. See ORS § 243.650 (emphasis added):

> "Collective bargaining" means the performance of the mutual obligation of a public employer and the representative of its employees to meet at reasonable times and confer in good faith with respect to employment relations for the purpose of negotiations concerning mandatory subjects of bargaining, to meet and confer in good faith in accordance with law with respect to any dispute concerning the interpretation or application of a collective bargaining agreement, and to execute written contracts incorporating agreements that have been reached on behalf of the public employer and the employees in the bargaining unit covered by such negotiations. <u>The obligation to meet and negotiate does not compel either party to agree to a proposal or require the making of a concession</u>.

Therefore, even if a promise to vote existed and such promise could be construed as a contract requiring the duty of good faith and fair dealing, the promise would not require ratification which allegedly would have eliminated the harm complained of--the terminations. Accordingly, this claim against the county is dismissed.

### D. <u>Sex Discrimination under ORS § 659A.030</u>

Again, because the District Attorney had the right to control employment, the County cannot be an employer for purposes of sex discrimination liability. Accordingly, this claim against the county is dismissed.

E. <u>Aiding and Abetting Sex Discrimination</u>

Plaintiffs concede this claim against the county commissioners.

CONCLUSION

For the reasons stated above, the motion to dismiss defendants Deschutes County and Board of Commissioners Unger, Baney and Luke (#9) is granted.

DATED this 24th day of October, 2011.

*Michael C. Hogan*
United States District Judge